UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | No. 3:15-CR-00162 |
| v. | ) | CHIEF JUDGE CRENSHAW |
| | ) | |
| KENDALL R. CARTER | ) | |

## PLEA AGREEMENT

The United States of America, through Donald Q. Cochran, United States Attorney for the Middle District of Tennessee, and Assistant United States Attorneys S. Carran Daughtrey and Jason Ehrlinspiel, and defendant, Kendall R. Carter, through defendant's counsel, Peter J. Strianse, pursuant to Rule 11(a)(2) and 11(c)(1)(C) of the Federal Rules of Criminal Procedure, have entered into an agreement, the terms and conditions of which are as follows:

### Charges in This Case

1.      Defendant acknowledges that he has been charged in the indictment in this case with Production and Attempted Production of Child Pornography, in violation of 18 U.S.C. § 2251(a) [Counts One through Five, and Counts Seven to Thirteen]; Extortion by Interstate Communications, in violation of 18 U.S.C. § 875(d) [Counts Six and Fourteen]; and Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) [Count Fifteen].

2.      Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney. Defendant fully understands the nature and elements of the crimes with which he has been charged.



## Charges to Which Defendant is Pleading Guilty

3.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Counts Four and Ten, charging Production of Child Pornography; Counts Six and Fourteen, charging Extortion; and Count Fifteen, charging Possession of Child Pornography. In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment. After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment.

## Penalties

4.     The parties understand and agree that the offenses to which defendant will enter a plea of guilty carry the following maximum penalties:

- For Counts Four and Ten (Production of Child Pornography): for *each* count, a mandatory minimum sentence of 15 years and statutory maximum sentence of 30 years; supervised release of 5 years to life, pursuant to 18 U.S.C. § 3583(k); a fine of up to $250,000; and a special assessment of $100.

- For Counts Six and Fourteen (Extortion): for *each* count, a statutory maximum sentence of 2 years; supervised release of up to one year; a fine of up to $250,000; and a special assessment of $100;

- For Count Fifteen (Possession of Child Pornography): a statutory maximum sentence of 10 years; supervised release of 5 years to life, pursuant to 18 U.S.C. § 3583(k); a fine of up to $250,000; and a special assessment of $100.

Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court, pursuant to 18 U.S.C. § 2259.

2

Defendant also understands that as a result of his offenses, he is subject to forfeiture of property as alleged in the indictment.

## Acknowledgements and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

5.      This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 3:15-CR-00162.

6.      Defendant understands that by pleading guilty he surrenders certain trial rights, including the following:

a.      If defendant persisted in a plea of not guilty to the charges against him, he would have the right to a public and speedy trial. Defendant has a right to a jury trial, and the trial would be by a judge rather than a jury only if defendant, the government, and the Court all agreed to have no jury.

b.      If the trial were a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant is presumed innocent; that the government bears the burden of proving defendant guilty of the charge(s) beyond a reasonable doubt; and that it must consider each count of the indictment against defendant separately.

3

c. If the trial were held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not the judge was persuaded of defendant's guilty beyond a reasonable doubt.

d. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence on his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.

e. At a trial, defendant would have a privilege against self-incrimination so that he could testify or decline to testify, and no inference of guilt could be drawn from his refusal to testify.

7. Defendant understands that by pleading guilty he is waiving all of the trial rights set forth in the prior paragraph. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

<u>Factual Basis</u>

8. Defendant will plead guilty because he is in fact guilty of charges contained in Counts Four, Six, Ten, Fourteen, and Fifteen of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

Defendant Kendall R. Carter used a variety of online usernames to talk with multiple females online, including minor females. He would befriend underage girls online, exchange nude images with them, and then threaten to expose the girls to others unless the girls took increasingly more graphic images including images of themselves engaging in sexual acts.

4

With respect to Counts Four and Six of the indictment, In early June 2014, Carter befriended Victim A, a sixteen old girl living in Germany where her father was serving active duty in the Air Force. At some point during their online conversations, Carter and Victim A voluntarily exchanged nude images of themselves. On June 18, 2014, however, Carter used a different online persona to begin threatening Victim A in chats, demanding that she send him nude images of herself. Carter sent images of Victim A back to her, stating that if she did not send more, he would ruin her by sending the pictures he already had to her friends and family. He also threatened to report her, which he claimed would result in her going to jail. In most of these images, Victim A was standing in front of a mirror taking a picture of herself. Carter demanded that she take pictures of herself posed in certain ways and inserting things in her vagina. Victim A engaged in contemporaneous chats with other individuals, lamenting that "I am crying because this . . . guy sexually abused me, is threatening me, and is trying to ruin my life by demanding I send him more nudes." Carter threatened Victim A multiple times, including on June 19, 20, 21, 22, and 23, 2014. On June 22, 2014, Carter successfully coerced Victim A to send him a nude picture of herself lying on her back with her breasts and vagina clearly visible. Shortly thereafter, Victim A told her father what was going on and ceased communication with Carter. Victim A's father reported the criminal activity to law enforcement.

With respect to Counts Ten and Fourteen of the indictment, in late August 2014, Carter befriended another child, a 12-year-old girl (Victim B) living in North Dakota. Carter represented to Victim B that he was a 14-year-old male in Tennessee named "Kenny." The two communicated online via Kik messenger and exchanged nude pictures of themselves on the Kik messenger application. Victim B sent approximately 50 pictures to Kenny and received approximately 30 from Kenny. Victim B later told investigators that Kenny, whom she never met, was her boyfriend. At approximately 3:00 a.m. on September 14, 2014, however, Victim B received several messages on her iPod Touch from someone identifying himself as someone who had hacked into her phone and seen her nudes and who was subsequently determined to be Carter. Carter sent the following message to Victim B describing what he was seeking from her:

> I'm only going to say this once. I can get into ur phone and see everything. I have an app on my phone that lets me get into urs. I can see everything. I can see ur kik convos ur nude text messages Instagram and pics u take and

send. And I can see u have sent nudes. So u have one chance. If u do what I say then I will stop and I will leave u alone and delete everything. If u don't listen then it will be bad. I will send ur pics to all of it [sic] friends on Instagram and I will make sure that they all see it. I already took pictures of it [sic] friends list and I will start sending it now if u don't listen and I will put the pics on porn sites and I will send them to ur parents. If u do what I say I won't do anything and I will delete them and I'll leave U alone. If u ignore me or tell anyone about me then I'll make sure that everyone sees them. Just do what I say and u will be fine.

During the subsequent chats, Carter repeatedly threatened to post the sexually explicit images of Victim B if she did not comply by producing and sending new ones to him. Victim B repeatedly asked Carter when he would leave her alone, when he would stop, and why she had to keep doing this. Over the course of this "chat," Carter told the victim, in part, to "take off your shirt and take a picture," "smile and don't look so mad," "take one of your pussy while u stand up put a finger inside of u," "take a pic of ur asshole," and "get ur [hair]brush and take some pics with it." Carter continued tormenting this child, coercing her into taking pictures and videos of herself performing numerous sexual acts on herself on September 14, 15, 16, 17, 18, 23, and 28. On October 9, 2014, Victim B disclosed the abuse to her middle school counselor, who referred the case to law enforcement authorities.

Investigators were able to determine that the IP address associated with online usernames belonged to Carter, who was in Tennessee at the time he was communicating with the two minor girls out of state.

With respect to Count Fifteen of the indictment, a forensic examination of the defendant's iPhone and iPad revealed that he was in possession of in excess of 100 sexually explicit images of other minor females, all of which were comparable to the ones Carter obtained from Victim A and Victim B. The examination also revealed multiple additional victims.

This statement of facts is provided to assist the Court in determining whether a factual basis exists for defendant's plea of guilty and criminal forfeiture. The statement of facts does not contain each and every fact known to defendant and to the United States concerning defendant's and/or others' involvement in the offense conduct and other matters.

6

## Sentencing Guidelines Calculations

9.     The parties understand that the Court will take account of the United States Sentencing Guidelines (hereinafter "U.S.S.G."), together with the other sentencing factors set forth at 18 U.S.C. § 3553(a), and will consider the U.S.S.G. advisory sentencing range in imposing defendant's sentence. The parties agree that the U.S.S.G. to be considered in this case are those effective November 1, 2016.

10.     For purposes of determining the U.S.S.G. advisory sentencing range, the United States and defendant agree to the following calculations, pursuant to Rule 11(c)(1)(C):

    a.     Offense Level Calculations.

        i.     The base offense level for Count Four is 32, pursuant to U.S.S.G. § 2G2.1(a); 2 levels are added, pursuant to U.S.S.G. § 2G2.1(b)(2)(A), because the offense involved the commission of a sexual act; 2 levels are added, pursuant to U.S.S.G. § 2G2.1(b)(6), because the defendant knowingly misrepresented his identity. The total offense level for this count is 36.

        ii.     The base offense level for Count Ten is 32, pursuant to U.S.S.G. § 2G2.1(a); 2 levels are added, pursuant to U.S.S.G. § 2G2.1(b)(1)(B), because the minor was between the age of 12 and 16; 2 levels are added, pursuant to U.S.S.G. § 2G2.1(b)(2)(A), because the offense involved the commission of a sexual act; 4 levels are added, pursuant to U.S.S.G. § 2G2.1(b)(4)(A), because the offense involved sadistic or masochistic conduct; 2 levels are added, pursuant to U.S.S.G. § 2G2.1(b)(6), because the defendant knowingly misrepresented his identity. The total offense level for this count is 42.

iii.      The base offense level for Counts Six and Fourteen is 18, pursuant to U.S.S.G. § 2G2.1(a). The total offense level is 18.

iv.      The base offense level for Count Fifteen is 18, pursuant to U.S.S.G. § 2G2.2(a); 4 levels are added, pursuant to U.S.S.G. § 2G2.2(b)(4)(A), because the offense involved material that portrayed violent conduct; 5 levels are added, pursuant to U.S.S.G. § 2G2.2(b)(5), because the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor; 2 levels are added, pursuant to U.S.S.G. § 2G2.2(b)(6), because the offense involved the use of a computer; and 2 levels are added, pursuant to U.S.S.G. § 2G2.2(b)(7)(A), because the defendant was in possession of more than 10 images. The total offense level for this count is 31.

v.      Pursuant to U.S.S.G. § 4B1.5(b), 5 levels are added because the defendant engaged in a pattern of activity involving prohibited sexual conduct.

vi.      Pursuant to U.S.S.G. § 3D1.2, Counts Four and Ten do not group, but the other counts will group with one of those two counts. Pursuant to U.S.S.G. § 3D1.4, 1 level is added because Counts Four and Ten do not group.

vii.      Assuming defendant clearly demonstrates acceptance of responsibility, to the satisfaction of the government, through his allocution and subsequent conduct prior to the imposition of sentence, a 2-level reduction will be warranted, pursuant to U.S.S.G. § 3E1.1(a). Furthermore, assuming defendant accepts responsibility as described in the previous sentence, the United States will move for an additional one-level reduction pursuant to U.S.S.G § 3E1.1(b), because defendant will have given timely notice of his intention to enter a plea of guilty, thereby permitting the

8

government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently.

   viii.  Accounting for the acceptance of responsibility deductions, the offense level is 45 ($42 + 1 + 5 - 3$). Pursuant to U.S.S.G. Chapter 5, Application Note 2, an offense level of more than 43 is to be treated as an offense level of 43. Thus, the final total offense level is 43, with an advisory guideline range of life.

Therefore, the parties agree that the final offense level is 43 (Agreed Upon Offense Level). Defendant understands that the offense level as ultimately determined by the Court (the "court-determined offense level)" may be different from the Agreed Upon Offense Level. Defendant likewise understands that the guidelines range as ultimately determined by the Court (the "court-determined guidelines range") may be based on an offense level different from the Agreed Upon Offense Level.

Agreements Relating to Sentencing

11.  This Plea Agreement is governed, in part, by Federal Rule of Criminal Procedure 11(c)(1)(C). That is, the parties have agreed that the sentence imposed by the Court shall include a term of imprisonment of 30 years in the custody of the Bureau of Prisons, to be followed by supervised release for life. Other than the agreed term of incarceration and supervised release for life, the parties have agreed that the Court remains free to impose the sentence it deems appropriate. If the Court accepts and imposes the agreed term of incarceration and supervised release set forth herein, defendant may not withdraw this plea as a matter of right under Federal Rule of Criminal Procedure 11(d). If, however, the Court refuses to impose the agreed term of incarceration and supervised release, thereby rejecting the Plea Agreement, or otherwise refuses to accept defendant's plea of guilty, either party shall have the right to withdraw from this Plea Agreement.

9

12.     Defendant understands and agrees that:

        a.      He will submit to sex offender evaluation and treatment as recommended by an appropriate provider contracted per the guidelines and procedures promulgated by the Administrative Office of the United States Courts.

        b.      He will register as a sex offender with the appropriate authorities of any state in which he resides, is employed, or attends school, in compliance with Title 18, United States Code 2250(a).

13.     Regarding restitution, the parties acknowledge that restitution may be owed to victims depicted in some of the child pornography produced and possessed by defendant, pursuant to Title 18, United States Code, Section 3663A. At the time of this agreement, however, no restitution claims have been made. Should any restitution claims arise, defendant understands that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant to make restitution, pursuant to *Paroline v. United States*.

14.     Defendant agrees to pay the special assessment of $500 at the time of sentencing to the Clerk of the U.S. District Court.

<u>Forfeiture or Abandonment of Property</u>

15.     The indictment charges that defendant is liable to the United States, upon conviction of the offense alleged in Count One, pursuant to 18 U.S.C. § 2253, for all visual depictions that were produced, transported, mailed, shipped or received in violation of the law; all property, real or personal, constituting or traceable to gross profits or other proceeds obtained from the offense; and all property, real and personal, used or intended to be used to commit or to promote the commission of the offense, including but not limited to the following electronic items

10

seized from defendant's home on December 18, 2014, including, but not limited to, an iPhone 5 (Model A1428, Serial Number C39JPSVJDTTN), and an iPad (Serial Number: DKVHHIENDFHY).

<u>Presentence Investigation Report/Post-Sentence Supervision</u>

16.     Defendant understands that the United States Attorney's Office, in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing, shall fully apprise the District Court and the United States Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, as well as any related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

17.     Defendant agrees to execute truthfully and completely a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the United States Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the Probation Officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 and enhancement of his sentence for obstruction of justice under U.S.S.G. § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

18.     This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Plea Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Plea Agreement

11

are limited to the United States Attorney's Office for the Middle District of Tennessee and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Plea Agreement.

## Entry of Guilty Plea

19.    The parties jointly request that the Court accept the defendant's plea of guilty as set forth in this agreement and enter an order reflecting the acceptance of the plea while reserving acceptance of this plea agreement until receipt of the pre-sentence report and sentencing.

## Waiver of Appellate Rights

20.    Regarding the issue of guilt, defendant hereby waives all (i) rights to appeal any issue bearing on the determination of whether he is guilty of the crimes to which he is agreeing to plead guilty; and (ii) trial rights that might have been available if he exercised his right to go to trial. The parties agree, however, that the defendant may reserve the right to appeal the denial of his motion to suppress, pursuant to Rule 11(a)(2). Regarding sentencing, Defendant is aware that 18 U.S.C. § 3742 generally affords a defendant the right to appeal the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal the sentence. Defendant further waives all appellate rights and all collateral attacks concerning forfeiture and all matters related thereto. Defendant also knowingly waives the right to challenge the sentence imposed in any motion pursuant to 18 U.S.C. § 3582(c) and in any collateral attack, including, but not limited to, a motion brought pursuant to 28 U.S.C. § 2255 and/or § 2241. However, no waiver of the right to appeal, or to challenge the adjudication of guilt or the sentence imposed in any collateral attack, shall apply to a claim of involuntariness, prosecutorial misconduct, or ineffective assistance of counsel. Likewise, the government waives the right to appeal the agreed upon sentence.

12

<u>Other Terms</u>

21.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office. Defendant further agrees that any monetary penalties imposed by the Court will be subject to immediate enforcement as provided for in 18 U.S.C. § 3613, and submitted to the Treasury Offset Programs so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts but will not affect the periodic payment schedule.

22.     Should defendant engage in additional criminal activity after he has pled guilty but prior to sentencing, defendant shall be considered to have breached this Plea Agreement, and the government at its option may void this Plea Agreement.

<u>Conclusion</u>

23.     Defendant understands that the indictment and this Plea Agreement have been or will be filed with the Court, will become matters of public record, and may be disclosed to any person.

24.     Defendant understands that his compliance with each part of this Plea Agreement extends until such time as he is sentenced, and failure to abide by any term of the Plea Agreement is a violation of the Plea Agreement. Defendant further understands that in the event he violates this Plea Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Plea Agreement, or may require defendant's specific performance of this Plea Agreement.

13

25.     Defendant and his attorney acknowledge that no threats have been made to cause defendant to plead guilty.

26.     No promises, agreements, or conditions have been entered into other than those set forth in this Plea Agreement, and none will be entered into unless memorialized in writing and signed by all of the parties listed below.

27.     <u>Defendant's Signature:</u>  I hereby agree that I have consulted with my attorney and fully understand all rights with respect to the pending indictment. Further, I fully understand all rights with respect to the provisions of the Sentencing Guidelines that may apply in my case. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this Plea Agreement, and I voluntarily agree to it.

Date:  12/4/17          _____
                        Kendall R. Carter
                        Defendant

14

28.    Defense Counsel Signature: I am counsel for defendant in this case. I have fully explained to defendant his rights with respect to the pending indictment. Further, I have reviewed the provisions of the Sentencing Guidelines and Policy Statements, and I have fully explained to defendant the provisions of those guidelines that may apply in this case.  I have reviewed carefully every part of this Plea Agreement with defendant.  To my knowledge, defendant's decision to enter into this Plea Agreement is an informed and voluntary one.

Date:  12/4/17

Peter J. Strianse
Attorney for Defendant

Respectfully submitted,

DONALD Q. COCHRAN
United States Attorney

By: S. Carran Daughtry
S. Carran Daughtrey
Jason Ehrlinspiel
Assistant U.S. Attorneys

Henry Leventis
Criminal Deputy Chief