```
1        IN THE UNITED STATES DISTRICT COURT
           MIDDLE DISTRICT OF TENNESSEE
2               NASHVILLE DIVISION

3    UNITED STATES OF AMERICA,      )
                                    )
4                   Plaintiff,      )
                                    ) Case No.
5         v.                        ) 3:15-cr-00162-1
                                    )
6    KENDALL R. CARTER,             ) CHIEF JUDGE CRENSHAW
                                    )
7                   Defendant.      )
                                    )
8                                   )
   - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
9
                    BEFORE THE HONORABLE
10
        CHIEF DISTRICT JUDGE WAVERLY D. CRENSHAW, JR.
11
                  TRANSCRIPT OF PROCEEDINGS
12
                      December 7, 2018
13 - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

14  APPEARANCES:

15          For the Plaintiff:  Ms. S. Carran Daughtrey
                                110 Ninth Avenue, S., Suite A961
16                              Nashville, Tennessee 37203

17
            For the Defendant:  Mr. Peter J. Strianse
18                              315 Deaderick Street, Suite 1700
                                Nashville, Tennessee 37238
19

20

21

22
   PREPARED BY:
23                  LISE S. MATTHEWS, RMR, CRR, CRC
                         Official Court Reporter
24                      801 Broadway, Room A839
                          Nashville, TN 37203
25              lise_matthews@tnmd.uscourts.gov
```

1          The above-styled cause came on to be heard on

2   December 7, 2018, before the Honorable Waverly D. Crenshaw,

3   Jr., Chief District Judge, when the following proceedings

4   were had, to-wit:

5          THE COURT:  All right.  Be seated.  We're here on

6   Case 15-162, United States of America versus Kendall Carter,

7   and Mr. Carter's in the courtroom.

8          If counsel can introduce themselves.

9          MS. DAUGHTREY:  Yes, Your Honor.  Carrie Daughtrey

10  for the United States.

11         MR. STRIANSE:  Good morning, Your Honor.  Peter

12  Strianse of the Nashville Bar here on behalf of Kendall

13  Carter, Jr.

14         THE COURT:  All right.  Mr. Carter, we're here

15  today for sentencing.  And in preparation for the sentencing

16  I've reviewed the plea petition, plea agreement.  Have you --

17  as well as the presentence report.  Have you received a copy

18  of the presentence report?

19         THE DEFENDANT:  Yes, sir.

20         THE COURT:  And did you get to read every page?

21         THE DEFENDANT:  Yes, sir.

22         THE COURT:  And every word on every page?

23         THE DEFENDANT:  Yes, sir.

24         THE COURT:  All right.  You all can be seated.

25         We're here today because on December the 4th, 2017

1    Mr. Carter and his attorney appeared and entered a plea of

2    guilty to Counts Four, Six, Ten, Fourteen, and Fifteen of the

3    superseding Information dated November 18, 2015, charging him

4    with production and attempted production of child

5    pornography, extortion by interstate communication,

6    production and attempted production of child pornography in

7    Count Ten, as well as extortion and possession of child

8    pornography in Count Fifteen.

9            At the time I accepted his plea agreement -- and

10   Mr. Carter and the Government presented me with a -- I

11   accepted his plea, and Mr. Carter and the Government

12   presented me with a plea agreement under Rule 11(c)(1)(C) for

13   a recommended sentence of 30 years, followed by lifetime

14   supervision.  I took that under advisement until the Court

15   received the presentence report.

16           I understand the Government has no objections to

17   the presentence report?

18           MS. DAUGHTREY:  No, Your Honor, we do not.

19           THE COURT:  Or Mr. Carter?

20           MR. STRIANSE:  That's correct, Your Honor.

21           THE COURT:  So I will accept the information and

22   facts in the presentence report as true and rely upon them

23   for sentencing today.

24           Mr. Carter, the statutory penalty for Count Four

25   is 15 to 30 years of imprisonment.  The period for supervised

release is five years to life.  Probation is not authorized.
You're also subject to a fine up to $250,000.  And there's a
mandatory $100 special assessment on each count.

Under Count Six, the maximum penalty is up to two
years of imprisonment, supervised release up to one year.
Probation is not authorized.  And there's a fine possibility
up to $250,000.

In Count Ten, the maximum sentence is 15 years to
30 years of imprisonment.  Supervised release of five years
to life.  Probation is not authorized, and a maximum fine of
$250,000.

Count Fourteen, the maximum sentence is up to two
years of imprisonment, one year of supervised release.
Probation is not authorized.  And a fine up to $250,000.

And finally, on Count Fifteen, the maximum
sentence is up to 20 years imprisonment, supervised release
is five years to life.  Probation is not authorized.  And
there's a $250,000 maximum fine.

Do you understand that I can sentence you up to
the statutory maximums?

THE DEFENDANT:  Yes, sir.

THE COURT:  I need you to verbalize.

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  Here the guidelines
calculation is -- the final offense level is 45, but that's

adjusted to 43 under the guidelines.  Mr. Carter has no
criminal history points.  So he's set at Category I.

        According to the guidelines a total offense of 43
and a Criminal History of I results in a sentencing range of
imprisonment for life.  However, since the statutory maximum
is on all counts, the guideline range becomes the statutory
maximum, which is 1,008 months of imprisonment.  Probation is
not authorized under the guideline.  The guideline range for
supervised release is five years to life.  And the guideline
range for a fine is 25,000 to $250,000.  And again a
mandatory $100 per count special assessment.

        Does the Government have any objection to the
guideline range?

        MS. DAUGHTREY:  No, Your Honor.

        THE COURT:  Or the Defendant?

        MR. STRIANSE:  No, Your Honor.

        THE COURT:  All right.

        So at this point, Mr. Carter -- I've read the
presentence report.  And I want to give you a chance, and
your lawyer, to talk on my -- on the first question, if I
accept or reject the plea agreement and the recommended
sentence from you and the Government.  And then go -- we'll
go from there if necessary.  So I'll turn it over -- does he
want to allocute, Mr. Strianse?

        MR. STRIANSE:  Your Honor, given the posture of

1 the case, you know this is also pursuant to Federal Rule of
2 Criminal Procedure 11(a)(2), so it contemplates an appeal to
3 the United States Court of Appeals for the Sixth Circuit on
4 our search issue.  So at this point in time he will not be
5 allocuting.
6          THE COURT:  All right.
7          Anything further you want to say on whether I
8 accept the plea agreement?
9          MR. STRIANSE:  Your Honor, the Court may remember
10 on April 17th, I filed a position paper which outlined the
11 3553(a) factors.  I would rely on that unless the Court
12 wanted to hear more from me.
13          THE COURT:  No.  And I've read your sentencing
14 memorandum, as well as that from the Government.
15          MR. STRIANSE:  Thank you.
16          THE COURT:  All right.  Anything the Government
17 wants to add on whether I should accept the plea agreement?
18          MS. DAUGHTREY:  Your Honor, the United States
19 would -- would ask that you honor the C plea agreement.
20          THE COURT:  All right.  Mr. Carter, I'm going to
21 accept the C agreement and impose the 30-year agreed
22 sentence, along with lifetime supervised release.  You are a
23 first offender.  It was nondirect -- indirect sexual contact.
24 And you've agreed to forfeiture.
25          Do we still have an outstanding issue on

1  restitution, or not?

2          MR. STRIANSE:  Your Honor, there is still an

3  outstanding issue on restitution.  It's been briefed by both

4  sides.  And my only thoughts on restitution were that the

5  Government is seeking restitution for the two victims for

6  psychological counseling and treatment.  I don't believe

7  either victim has received any actual treatment at this point

8  in time.  And it seemed to me that the request for

9  restitution appeared to be speculative.  I don't know how the

10 Court would be able to determine the reasonableness of the

11 request.  So that was the basis of my objection.

12          THE COURT:  Have you seen the calculations for the

13 $16,100 request for restitution?

14          MR. STRIANSE:  I've seen the letter where it --

15 from the Sexual Assault Center that came up with the 16,000,

16 and attached to that is a breakdown.  But again, these are

17 services that have yet to be rendered.

18          THE COURT:  All right.  Does the Government want

19 to respond?

20          MS. DAUGHTREY:  Yes, Your Honor.  There are two

21 victims in this case.  And there is one victim, the one in

22 North Dakota who has suffered tremendously as a result of

23 this.  She has been in psychiatric treatment and really

24 struggling.  She's had a lot of counseling.  Her family is --

25 one of the reasons we came to this agreement of 30 years is

1  because her family feels like bringing her down from North

2  Dakota to appear in this Court, even for sentencing, would be

3  so traumatic for this victim.  We had someone from our office

4  go up and meet with the family at some point in the fall of

5  last year.  And -- and she really has suffered.  So I think

6  that the potential for -- you know, if Your Honor were to do

7  anything, I think maybe the other -- the second victim has

8  not had as serious of a -- of consequences psychologically as

9  the first -- as the first victim.

10        If you were to do anything with that, I would

11  almost even recommend that four years worth of counseling go

12  to the North Dakota victim because she's had so much

13  difficulty.  I believe -- and our victim assistant is here

14  today, who has been talking to the family, can tell you that

15  she's even be in inpatient treatment as a result of what has

16  happened to her.  So I think restitution in this case is

17  extremely important.  We have tried to get specific numbers

18  from them, but they are just so overwhelmed with the problems

19  that their child is having that they've not gotten that

20  information back to us.

21        So that's why we -- we went to the local sexual

22  assault center here.  The $16,000 for each victim is -- what

23  it is is counseling for one week for two years.  Which is

24  probably underestimating it for the North Dakota victim,

25  possibly overestimating for the Germany victim.

1        THE COURT:  And I was looking for the letter.  But

2    when I read it, I couldn't figure out how they reached that

3    number.

4        MS. DAUGHTREY:  My understanding is that they take

5    the cost of a single --

6        THE COURT:  Hypothetical?

7        MS. DAUGHTREY:  Of a -- right.  If somebody were

8    to come into their program and get counseling for one week

9    times -- I guess 104 weeks is what they -- what they do.

10        THE COURT:  You know, I read your brief.  And --

11    which was very helpful.  But from what I could see from the

12    cases, I have to have some kind of factual basis, it seems

13    like what the Courts are looking for.  And I wasn't sure your

14    letter does it.  I'm -- I'm -- you know, I understand that

15    the victims -- and Mr. Carter has admitted to the conduct.

16    But I am concerned given it's contested, and I assume he's

17    not, you know, agreeing to the factual basis, while I'm sure

18    it's needed, I'm not sure if I impose it it's based upon any

19    facts before the Court.

20        MS. DAUGHTREY:  Okay.  Your Honor, I believe that

21    restitution can be imposed up to the 90 days after the

22    sentencing.  And so I would ask if Your Honor is not

23    comfortable with restitution today, if you would allow us to

24    supplement.  It may end up being more than $32,000, but I'll

25    work with Mr. Hernandez and see if we can get some support

1  for that.

2          THE COURT:  Any objection to that, Mr. Strianse?

3          MR. STRIANSE:  I have no objection on the

4  procedure, but we will still maintain our objection.

5          THE COURT:  Right.  And then -- I think that

6  sounds like a good way to go.  I ask for you all to talk, to

7  the extent that you can reach an agreement.

8          MR. STRIANSE:  Yes, sir.

9          THE COURT:  All right.  As a result of acceptance

10  of the plea agreement, Mr. Carter, you'll be committed to the

11  custody of the Attorney General for a total term 360 months

12  on Count Four; 24 months on Count Six; 360 months on Count

13  Ten; 24 months on Count Fourteen, and 240 months on Count

14  Fifteen, all to run concurrently.

15          Now, with regards to special conditions,

16  Mr. Carter, yesterday I reached out to the Bureau of Prisons.

17  I think in prior hearings I expressed the option for you -- I

18  don't think I can make you do it.  But if you -- you're very

19  close to getting your college degree.  And I expressed

20  earlier that if that's something you want to do, I was

21  hopeful the Bureau of Prisons would make provisions for that.

22  So what I found out is that every institution -- every

23  institution has an education program.  You're not going to be

24  precluded.  So if you want to participate, you're not

25  prevented or precluded from doing so.

1          I inquired about -- they said every institution
2   has a correspondence course, which I remember, but actually
3   most people do it now online.  And that's the -- that's going
4   to be the concern, about you being online.  Those
5   institutions that have it online I think have some
6   precautions that you wouldn't be able to access certain
7   sites, but I'm going to include in the judgment a
8   recommendation that you be assigned to a facility with an
9   education program, and if possible the online option.
10         They're going to look at the nature of the
11  charges, of course, on whether to give you access to online
12  courses.  So I'm going to make a factual finding, based on
13  everything in the presentence report that I believe
14  Mr. Carter having advanced so far in school, and was an
15  excellent student, it would be good for his reentry into
16  society if he was able to complete the online course.
17         The presentence report notes that you've got
18  considerable knowledge about computer usage.  And my
19  recommendation to the Bureau of Prisons is that they give you
20  some access to online courses so you can finish your college
21  degree at least.  And I think that they can take precautions
22  to make sure you are not able to access, if possible, certain
23  sites.
24         Anything more you want me to add to the college
25  degree component?

1    MR. STRIANSE:  Not to the college degree, Your

2  Honor.

3    THE COURT:  All right.  Further, I'm going to

4  recommend to the Bureau of Prisons that you, if you like --

5  and again it's optional -- participate in the Sex Offender

6  Management Program.  And that program's available regardless

7  of what your security level ends up being.  That program

8  provides intensive behavioral management plans while you're

9  incarcerated and gives you tools and mechanisms to control

10  that behavior.  I -- I didn't get to look it up, but I'm sure

11  Mr. Strianse can get access to it.  You know there's a

12  publication on it.  It may carry with it some other benefits,

13  but I don't want to represent what those were because I

14  didn't thoroughly look at it.  So I do want to recommend

15  that.  Then I want to recommend the Sex Offender Treatment

16  Program.  That, too, is an intensive treatment program to

17  treat and correct certain behavior.  Now, that program you

18  won't be eligible for until the last 18 months of your

19  custody sentence.  And again, based on my information from

20  the Bureau of Prisons, it's not security level sensitive.

21    Any other programs, Mr. Strianse, you all had in

22  mind?

23    MR. STRIANSE:  Your Honor, the Court may recall --

24  and you may be getting to it -- and I don't want to jump the

25  gun -- but when we were here on July 19th, the Court had done

1  its own research about the public safety factor issue.

2          Do you remember that, Your Honor?

3          THE COURT:  Well, I do.

4          MR. STRIANSE:  And I had filed in advance of the

5  sentencing that was scheduled for July 16th, 2018, a

6  supplemental position paper where I had suggested some

7  language that would go in the judgment if the Court was

8  inclined.  I can hand it up to the Court.

9          THE COURT:  What's the Docket Number?

10          MR. STRIANSE:  It's Docket Entry 86.

11          THE COURT:  Oh.  Yeah.

12          MR. STRIANSE:  If you take a look at page 2, Your

13  Honor -- and this was based on advice given to us by -- given

14  to Mr. and Mrs. Carter, Mr. Carter's parents, by a

15  criminologist by the name of Joel Sickler with over 30 years

16  of experience with the Federal Bureau of Prisons.  And the

17  language that he suggested that I included in my supplemental

18  position paper was, quote, Given the Defendant's age and

19  vulnerabilities, the Court strongly recommends the sentence

20  length PSF, for public safety factor, be waived in this case.

21  The Court further recommends that the Defendant be designated

22  to an institution housing a Sex Offender Management Program,

23  and then the acronym for that; specifically, the program at

24  FCI Seagoville.  What I would ask the Court to do is to

25  delete Elkton or Englewood, and ask for a specific

1  recommendation to FCI Seagoville, which is in Texas, and then
2  include the additional language:  If the Bureau of Prisons
3  does not waive the PSF, the Court recommends the program at
4  FCI Marianna, which is in --
5        THE COURT:  Okay.  I think we're on the same page.
6  Because the two programs I am going to recommend, they're not
7  security sensitive.  And I talked -- and that's based on my
8  conversation with the senior counsel for the Bureau of
9  Prisons yesterday.  Because I -- I had read this.  And I was
10  concerned what findings do I need to make --
11        MR. STRIANSE:  Right.
12        THE COURT:  -- so he can get into those programs.
13  So the attorney -- and his name was Paul Irby.  I'm going to
14  have him come to Nashville to meet with the panel.  Said that
15  both the Sex Offender Management Program and the Sex Offender
16  Treatment Plan are not security sensitive.
17        Now, I have one more that is, but that's the
18  reason -- maybe that's where we're going.
19        MR. STRIANSE:  And my concern is more than
20  inclusion in the Sex Offender Management Program.
21        THE COURT:  Uh-huh.
22        MR. STRIANSE:  My concern is, as expressed in
23  Docket Entry 86, is due to the length of the sentence, unless
24  the Court waives the public safety factor, he would not be
25  eligible to go to an FCI low facility.  And the Court

1  addressed this back in July, where I think the Court shared
2  the same concern. And you indicated to me -- and I've got a
3  transcript of that hearing that I could hand up if the Court
4  wants to refresh its recollection.
5          THE COURT: No, I remember.
6          MR. STRIANSE: You suggested that you might need
7  to make some additional findings --
8          THE COURT: Yeah.
9          MR. STRIANSE: -- if you were going to suggest a
10 waiver of the public safety factor. And I would respectfully
11 suggest to the Court that those findings could come from
12 Docket Entry 80, which was my original position paper, page
13 ID 692, that talk about the history and personal
14 characteristics of Mr. Carter.
15          Obviously the Court wouldn't have to take every
16 fact that I've included in there, but I think it might help
17 inform the Court's recommendation if you were willing to
18 waive the public safety factor.
19          THE COURT: All right. Well, let's keep down that
20 path. Because that -- that -- that coincides with my next
21 recommendation to the Bureau of Prisons based on my
22 conversation.
23          Mr. Carter, there's a possibility -- and again, I
24 can't make the Bureau of Prisons, but I've talked to their
25 lawyer, so I'm hopeful this would work. That you could

volunteer during your custody sentence -- he could be
designated a teacher. And he would have the opportunity,
given your math skills, in particular to help other inmates
with simple math, algebra, those kind of things, as they're
working toward maybe a GED or whatever. And again, that's an
option to you, but that's where the management variable comes
in. This one is sensitive. This one is safety sensitive.
And he is -- so in order to do that, these findings in your
document are good, but what I was hoping is to say the Court
wants to find that based upon all the information in the
presentence report Mr. Carter does not present a safety
issue. There's nothing in the presentence report that --
what the information in the presentence report is is that he
was a very good student in all respects. This is his first
criminal offense. And the facility that he'll I think be
assigned to, it will be others who are serving time for
similar or same crimes, and, therefore, he would not present
a safety issue as to those other inmates there. Does that
make sense?

          MR. STRIANSE: Yes, sir, it does.

          THE COURT: And I think that's where, I'm told, I
could make -- request a management variable to the particular
facility he's assigned to, to classify him as a low safety
risk. While the criminal conduct he's admitted to did -- did
involve some indirect contact, and that, no doubt, caused

injury to those victims, I believe once he's assigned to a
facility, and given his background, his strong and diligent
work as a student, the nature and history of his activity
prior to this criminal conduct, there's every indication to
the Court -- and the Court so finds -- that in the facility
that he will be assigned to I don't think Mr. Carter creates
a safety risk to others there.

Now, does the Government contest those findings?

MS. DAUGHTREY:  Your Honor, I just want to make
clear, it is the Government's position that he is a public
safety risk if he's out of prison.

THE COURT:  And we're not talking about out of
prison.

MS. DAUGHTREY:  Right.  And I just --

THE COURT:  We're talking about --

MS. DAUGHTREY:  -- wanted to clarify that.

THE COURT:  Good.

MS. DAUGHTREY:  From what I can -- I know at this
point, I don't see him being a public safety risk within the
BOP system.

THE COURT:  And do you see him to be a risk within
that system, toward others?

MS. DAUGHTREY:  No, I do not.  But I'm also not
qualified to say that.  I just --

THE COURT:  No.

1          MS. DAUGHTREY:  For purposes of the record, I just

2   want to make sure that the Court's not saying he's not a

3   public safety risk --

4          THE COURT:  No, I'm talking --

5          MS. DAUGHTREY:  -- outside.

6          THE COURT:  No, not at all.  I'm talking about

7   purely for the purposes of the BOP classification of his

8   security level.  I think all the information in the

9   presentence report suggests he will not be a safety risk

10  while he is in custody.  And the Government does not contest

11  that?

12         MS. DAUGHTREY:  Right.  I defer to Your Honor.

13         THE COURT:  All right.  Now, based on that, I

14  recommend to the particular facility, whatever that is, that

15  there be a management variable based upon the factual

16  findings that are not contested by the Government here.

17         MR. STRIANSE:  And, Your Honor, we were asking for

18  a specific recommendation from the Court to the facility at

19  FCI Seagoville, Texas.  And I've got that language --

20         THE COURT:  Right.  I'll make that recommendation.

21  And that's all that will be, is a recommendation.

22         MR. STRIANSE:  Yes, sir.

23         THE COURT:  I think that there are certain

24  facilities that Mr. Carter would be assigned to.  And you've

25  got them here.  And whether or not he'll get that or not is

purely on the basis about the census and availability there.
But I'll make the recommendation.

MR. STRIANSE:  Thank you.

THE COURT:  Would you object if I also stated the
most important thing to Mr. Carter would be that he get the
opportunity to complete his college degree, he get the
opportunity to participate in the Sex Offender Management
Program and the Sex Offender Treatment Program, and that he
gets the opportunity to serve as a teacher to others while he
is in custody?

MR. STRIANSE:  We have no objection to those
recommendations.

THE COURT:  So just so the record's clear -- and
the Bureau of Prisons will get a copy of this -- the factual
findings that the Court relies on, and as I've already
stated, is based upon all the information I have been
provided by Mr. Carter and his attorney, as well as that in
the presentence report, which is not disputed.

So I think -- we'll attach a copy of this
transcript to the judgment.

And I think, Mr. Carter, that will accomplish what
we're trying to do here.

Any other conditions, Mr. Strianse?

MR. STRIANSE:  No other conditions, Your Honor.

THE COURT:  All right.  After your custody

sentence, you will be on lifetime supervised release.  That
will carry with it certain special conditions, such as mental
health program, sex offender assessment, sex offender
registration according to any state laws, not consume any
alcoholic beverages, pre-approve residence and employment by
probation, not associate with children under the age of 18 or
frequent, volunteer or work in places where children
congregate, such as playgrounds, unless approved by
probation.  You're not to have any contact, Mr. Carter, with
AA, MK, or MH, or the victims' immediate families, directly
or indirectly, either in person or by telephone, mail,
interactive computer service, third-party or any other means
as probation allows and verifies.

          You shall not buy, sell, exchange, possess, trade
any visual depictions of minors or adults engaged in sexually
explicit conduct, and not correspond or communicate in person
or by mail, or otherwise, with individuals or companies
offering to buy, sell, trade any visual -- any such visual
depictions of minors or adults engaged in such sexual
conduct.  You shall not possess or use any device capable of
creating pictures or videos without prior approval of
probation.

          You will need to consent to probation conducting
unannounced examinations of your computer systems as
specified in the judgment, as well as periodic inspection of

1  any hardware or software functioning on your computer system.
2  You'll provide probation with an accurate information about
3  your entire computer system, internal and external storage
4  devices, as -- as approved and allowed by probation, and
5  furnish all financial records.  I also impose the standard
6  conditions, which include be truthful to probation, follow
7  their instructions, live and work in a place approved by
8  probation, not commit any other -- any other federal, state
9  or local crimes, not possess any unlawful controlled
10 substances, and all the other standard conditions of
11 probation that will be in the judgment.
12         I will not impose a fine because I determine he's
13 financially unable to pay a fine.  But I do impose the
14 mandatory special assessment of $100 per count for a total of
15 $500.  I'm not going to impose any restitution because the
16 Court doesn't have sufficient factual basis to do so, but the
17 notation by the Government that it may within 90 days make
18 application for -- for a restitution amount.
19         I think we've agreed to -- agreed forfeiture
20 judgment on the iPhone 5 Model A1428, can -- and the iPad
21 serial number DKVHHIENDFHY.  Both of those items will be
22 forfeited to the United States by agreement.  All right.
23         Okay.  Do the parties have any objection to the
24 sentence that have not been previously been stated?  From the
25 Government?

1          MS. DAUGHTREY:  No, Your Honor.  I do know that

2     the Sixth Circuit has asked that there be a basis for the

3     special conditions of supervised release.  And I just wanted

4     to see if the Defense objects to any of those, if we need

5     to -- for you to articulate those reasons on the -- on the

6     record.

7          THE COURT:  Did you have any one in mind?  Seems

8     to me that all of the conditions of -- special conditions are

9     justified by the information in the presentence report.  Any

10     objection to any of those special --

11          MR. STRIANSE:  We don't have any objection, Your

12     Honor.

13          THE COURT:  Okay.  And the factual basis the Court

14     relies upon is what's in the presentence report.

15          All right.  With that qualification, does the

16     Government have any objections to the --

17          MS. DAUGHTREY:  No, Your Honor.

18          THE COURT:  Or the Defendant?

19          MR. STRIANSE:  No, Your Honor.

20          THE COURT:  So the sentence is hereby ordered

21     imposed as stated.

22          Does the Government want to dismiss the remaining

23     counts?

24          MS. DAUGHTREY:  Yes, Your Honor, we would like to

25     do so at this point.

```
1            THE COURT:  So Counts One, Two, Three, Five,
2   Seven, Eight, Nine, Eleven, Twelve, and Thirteen are
3   dismissed on the Government's motion.
4            Now, Mr. Carter, you have the right to appeal.
5   But your appeal rights are severely limited by the plea
6   agreement.  Subject to the plea agreement, if you can't
7   afford the cost to appeal, you can appeal as a pauper.  If
8   you tell your lawyer you want to appeal, he will do so.  If
9   you tell the Clerk of Court you want to appeal, you can do
10  so.  And the court officer is handing you now a form notice
11  that you can use however you want, but I strongly urge you to
12  talk to a lawyer.
13           Do you have any questions about your appeal
14  rights?
15           THE DEFENDANT:  No, sir.
16           THE COURT:  Okay.  Anything else from the
17  Government?
18           MS. DAUGHTREY:  No, Your Honor.
19           MR. STRIANSE:  Your Honor, can I address the Court
20  just briefly?
21           THE COURT:  Sure.
22           MR. STRIANSE:  Your Honor, the Court recognizes
23  that the procedural posture of this case is that this was a
24  conditional plea pursuant to Rule 11(a)(2) of the Federal
25  Rules of Criminal Procedure.  And that was really one of the
```

motivating factors for me to file the motion to reconsider.
And I'm not arguing the motion to reconsider at all at this
point.  I realize that that has been denied.  And I was
motivated to do that because of the decision in *Carpenter v.*
*U.S.* this summer.  And after *Carpenter*, there were certain
documents that really were not relevant before *Carpenter* that
I think became relevant.

          The Court may recall I included in a footnote in
my motion to reconsider certain documents that we don't have.
I was very careful to put in that footnote that I'm not -- I
have no complaints at all with the discovery production by
the Government throughout the pendency of this case.  I don't
expect the Government to go find anything for me.  The
purpose of that footnote was just to basically inquire if the
Government happens to have those items that are enumerated in
that footnote 1, then -- again, I'm concerned about the
District Court record on appeal when we go to the Sixth
Circuit.  If they had it, I would do a very simple Notice of
Filing and include that in the District Court record.  I just
wanted to bring that to the Court's attention and make sure
the Government understood what -- what my objective was here.
Not in any way complaining about what they've produced.  They
may not have these items, but I would hope that they would --
it's a large volume of discovery.  I would hope they would
take another look at it and see if any of those documents do

1   exist in their possession, and, if so, produce them for me so
2   I could do this Notice of Filing.
3           THE COURT:  Ms. Daughtrey?
4           MS. DAUGHTREY:  Your Honor, I presume everything
5   that we have was turned over in discovery.  I can verify
6   that.
7           THE COURT:  Okay.
8           MS. DAUGHTREY:  But -- I -- I -- typically we
9   don't turn over those kind of administrative papers, as I
10  said in my response, but in this case those were turned over.
11  So I just assumed that all of them that we had were turned
12  over.  But I will go back and look.  I'm not the person who
13  did the discovery, but I'll review it.
14          THE COURT:  All right.
15          MR. STRIANSE:  Thank you.
16          THE COURT:  Okay.  Mr. Strianse, is Mr. Carter's
17  parents in the audience?
18          MR. STRIANSE:  They are right here.
19          THE COURT:  Can they have a few minutes to talk?
20          MARSHAL:  Yes, sir.
21          THE COURT:  Or has that already occurred?
22          MARSHAL:  It hasn't occurred.
23          THE COURT:  Then Mr. Carter, if you would like,
24  the marshals and I are going to allow your parents to chat.
25          I think the marshals are going to want you to come

1    to the next row.  One seat up.  And then they'll make him
2    available.  Yeah.  If you just move to that one.  Yeah.
3    That's it.  You've got -- you may want to come down a little
4    bit.
5                (Respite.)
6                MR. STRIANSE:  Thank you for that, Your Honor.
7                THE COURT:  Okay.  Thank you.
8                (Court adjourned.)
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1    REPORTER'S CERTIFICATE

2

3            I, Lise S. Matthews, Official Court Reporter for

4    the United States District Court for the Middle District of

5    Tennessee, with offices at Nashville, do hereby certify:

6            That I reported on the Stenograph machine the

7    proceedings held in open court on December 7, 2018, in the

8    matter of UNITED STATES OF AMERICA v. KENDALL R. CARTER, Case

9    No. 3:15-cr-00162-1; that said proceedings in connection with

10   the hearing were reduced to typewritten form by me; and that

11   the foregoing transcript (pages 1 through 26) is a true and

12   accurate record of said proceedings.

13           This the 22nd day of January, 2019.

14

15                              /s/ Lise S. Matthews
                                LISE S. MATTHEWS, RMR, CRR, CRC
16                              Official Court Reporter

17

18

19

20

21

22

23

24

25